**AMERICAN HONDA MOTOR CO., INC.,**
**Plaintiff,**

v.

**UNITED STATES of America,**
**Defendant.**

**No. 73 Civ. 1717–LFM.**

United States District Court,
S. D. New York.

Sept. 12, 1973.

Paul J. Curran, U. S. Atty., S. D. N. Y., New York City, for defendant; David P. Land, Asst. U. S. Atty., of counsel.

Burlingham, Underwood & Lord, New York City, for plaintiff; Elkan Turk, Jr. and Michael Marks Cohen, New York City, of counsel.

## OPINION

MacMAHON, District Judge.

This is a motion, pursuant to Rule 12(b)(1), Fed.R.Civ.P., for an order dismissing the complaint for lack of subject matter jurisdiction.

American Honda Motor Co., Inc. ("creditor") is the authorized wholesale distributor of Honda motorcycles in the United States. It agreed, pursuant to a purchase money security agreement, to sell new Honda motorcycles to Better Ideas in Motion, Inc. ("taxpayer"). The agreement granted the creditor a continuing purchase money security interest in the motorcycles and in the proceeds from their resale by the taxpayer to retail customers.[1] Upon resale of the motorcycles, the taxpayer deposited the proceeds in a special bank account opened for this purpose at the Chase Manhattan Bank ("Chase").

During this arrangement, the taxpayer became delinquent in its payment of taxes, and the Internal Revenue Service ("IRS"), after notice and demand to the taxpayer, made four levies on the special account. The levies were served on Chase on January 19, 1971 in the amount of $2,008.44; June 22, 1971 in the amount of $2,806.02; June 30, 1971 in the amount of $2,682.44; and July 28, 1971 in the amount of $5,846.31. Chase paid the stated amount to IRS after each levy. The taxpayer defaulted in its obligations to the creditor in August 1971, and the creditor obtained a judgment against the taxpayer in November 1971 for $132,292.82, plus interest. More than $100,000.00 of the judgment remains unsatisfied.

The creditor commenced supplementary proceedings and served an information subpoena on Chase. Chase, on January 18, 1972, in response to the subpoena, advised the creditor that IRS had made three levies in June and July 1971

1. The agreement was perfected by filing in accordance with the Uniform Commercial Code of New York, McKinney's Consol.Laws, c. 38, and there is no question as to its validity.

against the taxpayer's special account. On July 10, 1972, Chase, in response to another subpoena, advised the creditor that IRS had made an earlier levy in January 1971. The creditor, therefore, filed a written request with IRS on April 21, 1972 for return of the money which it had received from Chase pursuant to the June and July levies. This request was amended on July 11, 1972 to include the money received under all four levies.

IRS honored the creditor's claim as to the July 28, 1971 levy and paid over $5,846.31 to the creditor. That levy, therefore, is no longer in issue. However, IRS rejected the creditor's claim as to the first three levies asserting that it was filed too late. The creditor then brought this action for the monies received by IRS under the three earlier levies.

IRS contends that the action is time barred and that this court, therefore, lacks subject matter jurisdiction. The determination of this issue requires reference to a complex of applicable statutes.

██ The government has consented to suit by third parties in cases of wrongful levy, 26 U.S.C. § 7426(a),[2] but such suits must be brought within nine months of the date of levy. 26 U.S.C. § 6532(c)(1). However, if a request for the return of the levied property is filed by the third party, the period is extended for twelve months from the filing of the request, or, alternatively, for six months from the mailing of a notice of disallowance, whichever is shorter. 26 U.S.C. § 6532(c)(2).[3] Hence, any person claiming an interest in or lien upon property wrongfully levied may sue the United States within the period of the prescribed time limitations. Here, the creditor neither filed a request for return of the property nor commenced this action within the statutory period. It would appear, therefore, that the action is time barred.

██ The creditor argues, however, that since IRS neither gave plaintiff actual[4] nor constructive notice of the levy (by filing its tax lien), the nine-month statute of limitations applicable to levies on money should not begin to run until notice was actually given to it. We reject the argument because IRS has no duty to notify creditors, qua creditors, of a levy. Rather, under the applicable procedure, if the taxpayer refuses to pay his taxes within ten days of notice and demand, IRS may levy on his property merely by serving a notice of levy on the taxpayer or on any person in possession of the taxpayer's property. 26 U.S.C. § 6331(a);[5] IRS Reg. § 301.-

2. Section 7426(a) provides, in pertinent part:
"(a) Actions permitted.—
(1) Wrongful levy.—If a levy has been made on property or property has been sold pursuant to a levy, any person (other than the person against whom is assessed the tax out of which such levy arose) who claims an interest in or lien on such property and that such property was wrongfully levied upon may bring a civil action against the United States in a district court of the United States. Such action may be brought without regard to whether such property has been surrendered to or sold by the Secretary or his delegate."

3. Section 6532(c) provides, in pertinent part:
"(c) Suits by persons other than taxpayers.—
(1) General Rule.—Except as provided by paragraph (2), no suit or proceeding under section 7426 shall be begun after the expiration of 9 months from the date of the levy or agreement giving rise to such action.

(2) Period when claim is filed.—If a request is made for the return of property described in section 6343(b), the 9-month period prescribed in paragraph (1) shall be extended for a period of 12 months from the date of filing of such request or for a period of 6 months from the date of mailing by registered or certified mail by the Secretary or his delegate to the person making such request of a notice of disallowance of the part of the request to which the action relates, whichever is shorter."

4. We note in passing that plaintiff was advised by Chase of the June and July levies on January 18, 1972 but did not submit its request for return of the money until the nine-month period had expired, over three months later.

5. Section 6331 provides, in pertinent part:
"(a) Authority of Secretary or delegate.— If any person liable to pay any tax neglects or refuses to pay the same within 10 days

6331–1(a)(1).[6] The nine-month period begins on the date when the notice of levy is served upon the person in possession of the taxpayer's property, not when a creditor of the taxpayer receives notice of the levy.[7] If the creditor's argument were accepted in a case involving several creditors, all of whom received notice on a different date, there would be several different nine-month periods. This situation would clearly be unworkable. 26 U.S.C. § 6532(c)(1); United States v. Pittman, 449 F.2d 623, 627 (7 Cir. 1971); United States v. Cameron Constr. Co., 246 F.Supp. 869 (S.D.N.Y.1965). Furthermore, the levy procedure does not require filing of a tax lien by IRS. United States v. Eiland, 223 F.2d 118 (4 Cir. 1955); First Nat'l Bank of Norfolk v. Norfolk & W. Ry., 327 F.Supp. 196, 199 (E.D.Va. 1971). Therefore, the creditor's lack of

after notice and demand, it shall be lawful for the Secretary or his delegate to collect such tax (and such further sum as shall be sufficient to cover the expenses of the levy) by levy upon all property and rights to property (except such property as is exempt under section 6334) belonging to such person or on which there is a lien provided in this chapter for the payment of such tax. Levy may be made upon the accrued salary or wages of any officer, employee, or elected official, of the United States, the District of Columbia, or any agency or instrumentality of the United States or the District of Columbia, by serving a notice of levy on the employer (as defined in section 3401(d)) of such officer, employee, or elected official. If the Secretary or his delegate makes a finding that the collection of such tax is in jeopardy, notice and demand for immediate payment of such tax may be made by the Secretary or his delegate and, upon failure or refusal to pay such tax, collection thereof by levy shall be lawful without regard to the 10-day period provided in this section."

6. IRS Reg. § 301.6331–1 provides, in pertinent part:

"(a) Authority to levy—(1) In general. If any person liable to pay any tax neglects or refuses to pay such tax within 10 days after notice and demand, the district director to whom the assessment is charged or, upon his request, any other district director, may proceed to collect the tax by levy upon any property, or rights to property, whether real or personal, tangible or intangible, either belonging to such person or with respect to which there is a lien provided by section 6321 or 6324 (or the corresponding provision of prior law) for the payment of such tax. As used in section 6331 of this section, the term 'tax' includes any interest, additional amount, addition to tax, or assessable penalty, together with any costs and expenses that may accrue in addition thereto. For exemption of certain property from levy, see section 6334 and the regulations thereunder. Property subject to a Federal tax lien which has been sold or otherwise transferred by the taxpayer may be seized while in the hands of the transferee or of any subsequent transferee. However, see provisions under sections 6323 and 6324(a) (2) and (b) for protection of certain transferees against a Federal tax lien. Levy may be made by serving a notice of levy on any person in possession of, or obligated with respect to, property or rights to property subject to levy including receivables, bank accounts, evidences of debt, securities, and accrued salaries, wages, commissions, and other compensation. A levy extends only to property possessed and obligations which exist at the time of the levy. Obligations exist when the liability of the obligor is fixed and determinable although the right to receive payment thereof may be deferred until a later date. For example, if a wage earner is paid on the Wednesday following the close of each workweek, a levy made upon his employer on Monday would reach his wages due for the prior workweek, although the employer need not satisfy the levy by paying over such amount to the district director until Wednesday. Similarly, a levy only reaches property subject to levy in the possession of the person levied upon at the time the levy is made. If, for example, a levy is made on a bank with respect to the account of a delinquent taxpayer and the bank surrenders to the district director the amount of the taxpayer's balance at the time the levy is made, the levy is satisfied. The levy has no effect upon any subsequent deposit made in the bank by the taxpayer. Subsequent deposits may be reached only by a subsequent levy on the bank."

7. Correctly, the creditor does not claim to have been in actual or constructive possession of the funds in the Chase account. The Uniform Commercial Code allows the parties to a security agreement to decide who shall have the right to possession of the collateral. 69 Am.Jur.2d, Secured Transactions § 201 (1973); N.Y. Uniform Commercial Code §§ 9—201, 9—205, 9—305. Here, the agreement between the creditor and debtor appears to give plaintiff no right to possession. Thus, plaintiff was not entitled to notice of levy as a possessor of the funds in the Chase account.

actual or constructive notice of the levy does not toll the nine-month period.

■ It is apparent that IRS was not aware of plaintiff's security interest in the debtor's Chase account. There is no ·evidence that either the title of the account, Chase or the taxpayer-debtor drew IRS's attention to the creditor's interest. Although the security agreement had been filed and thus was a matter of public record, there is no requirement that IRS seek to discover security interests in the property and funds upon which it levies. Rather, since the Chase account was solely for the protection of plaintiff, one would expect it to inquire as to the status of the account periodically. It did not make such inquiries. Plaintiff may not shift the blame for its own negligence to IRS.

■ The creditor also argues that its request with respect to the Levy of June 22, 1971 [8] was timely because IRS did not cash Chase's check until July 26, 1971. It claims that the date of the levy was July 26, 1972 because until the money was actually paid "the bank was exposed to a possible suit by [the creditor]

to stop payment on the check. . . ." As we have already shown, the levy was made when the notice of levy was served on Chase. IRS Reg. § 301.6331–1(a)(1). Accordingly, this argument must fail since the creditor's request was not made within nine months of the levy.

■ The creditor also advances an interesting interpretory argument to avoid the statute of limitations. It urges that "property" "should be construed to include 'money' in which a security interest arises from a commercial transaction financing agreement, duly perfected and filed. . . ." Such an interpretation would remove any obstacle to the return of the monies paid pursuant to the levies since specific property can be returned "at any time." Money or "[a]n amount equal to the amount of money levied upon," however, may be returned only within nine months of the levy. 26 U. S.C. § 6343(b).[9] Likewise, a request for the return of specific property may be filed at any time, but a request for the return of money must be filed within nine months of the date of the levy. IRS Reg. § 301.6343–1(b)(1).[10] We

8. The check that the creditor proffers for this contention is in the amount of $2,682.44. That check represents payment of the levy of June 30, 1971 and not, as the creditor asserts, payment of the June 22, 1971 levy. However, plaintiff's argument is not undermined by this discrepancy.

9. Section 6343(b) provides:
"(b) Return of property.—If the Secretary or his delegate determines that property has been wrongfully levied upon, it shall be lawful for the Secretary or his delegate to return—
(1) the specific property levied upon,
(2) an amount of money equal to the amount of money levied upon, or
(3) an amount of money equal to the amount of money received by the United States from a sale of such property.
Property may be returned at any time. An amount equal to the amount of money levied upon or received from such sale may be returned at any time before the expiration of 9 months from the date of such levy. For purposes of paragraph (3), if property is declared purchased by the United States at a sale pursuant to section 6335(e) (relating to manner and conditions of sale), the United States shall be treated as having received an

amount of money equal to the minimum price determined pursuant to such section or (if larger) the amount received by the United States from the resale of such property."

10. IRS Reg. § 301.6343–1(b)(1) provides:
"(b) Return of property—(1) General rule. If the district director determines that property has been wrongfully levied upon, the district director may return—
(i) The specific property levied upon,
(ii) An amount of money equal to the amount of money levied upon (without interest) or
(iii) An amount of money equal to the amount of money received by the United States from a sale of the property (without interest).
If the United States is in possession of specific property, the property may be returned at any time. An amount equal to the amount of money levied upon or received from a sale of the property may be returned at any time before the expiration of 9 months from the date of the levy. When a request described in subparagraph (2) of this paragraph is filed for the return of property before the expiration of 9 months from the date of levy, an amount of money may be returned after a

think plaintiff's interpretation is untenable. A short period of limitations is needed for money because IRS may suspend collection efforts after it has made a levy satisfying the taxpayer's liability. There is no exception to this period of limitations for proceeds or money in which a creditor may have a security interest, nor will this court create one.

 The creditor also argues that the nine-month period was not intended to bar suits but only to put IRS on notice of its wrongful levy; that IRS already had notice of its wrongful levy by virtue of the filing of the purchase money security interest pursuant to the Uniform Commercial Code; and that, therefore, there is no need to enforce the nine-month period. This argument would undermine the nine-month period of limitations since IRS would not usually have actual notice of the identity of a delinquent taxpayer's creditors until after the levy. Furthermore, the nine-month period is clearly intended to operate as a statute of limitations and to bar suits filed after that period.

Finally, the creditor argues that it was deprived of due process because IRS did not give it notice of the levy and that the levy constituted a taking of private property for public use without just compensation. This argument challenges the constitutional validity of the levy procedure. The constitutionality of the levy and distraint procedure was well established, even before the passage of 26 U.S.C. § 7426, despite the absence of a remedy for wrongful levy of a third party's property. Sprin-

ger v. United States, 102 U.S. 586, 593–594, 26 L.Ed. 253 (1880); Mason v. Rollins, 16 Fed.Cas. 1061 (No. 9,252) (C.C. N.D.Ill.1869); Phillips v. United States, 346 F.2d 999 (2 Cir. 1965).[11] The procedure is a function of the unquestioned power of congress to lay and collect taxes.

This action is time barred and, therefore, this court lacks subject matter jurisdiction. Rock v. United States, 279 F.Supp. 96 (S.D.N.Y.1968).

*Accordingly, the motion to dismiss the complaint is granted.*

So ordered.

reasonable period of time subsequent to the expiration of the 9-month period if necessary for the investigation and processing of such request. In cases where money is specifically identifiable, as in the case of a coin collection which may be worth substantially more than its face value, the money will be treated as specific property and, whenever possible, this specific property will be returned. For purposes of subparagraph (1) (iii) of this paragraph, if property is declared purchased by the United States at a sale pursuant to section 6335(e), the United States is treated as having received an amount of money equal to the minimum price determined by the district director before the sale or, if larger, the amount received by the United States from the resale of the property."

11. In some cases, a third party could sue the district director of IRS personally for the return of property wrongfully levied upon. Technically, however, this was not a suit against the government. Federal Tax Lien Act, H.R. 11256, S.Rep.No.1708, 89th Cong., 2d Sess., U.S.Code Cong. & Admin.News 1966, p. 3722, Calendar No. 1676, II(J); Internal Revenue Bulletin 1966–2, at 896.